**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CLAYTON DEWADE LOWRY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | **Case No. CIV-13-43-L** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,**[1] ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further proceeding consistent with this Report and Recommendation.

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Therefore, pursuant to Rule 25(d) (1) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is hereby substituted for Commissioner Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

Plaintiff filed the applications for DIB and SSI leading to the appeal currently under consideration on October 29, 2009, alleging a disability beginning on May 6, 2009, the date the denial of his previous application for DIB became final (TR. 10). The current applications were denied on initial consideration and on reconsideration at the administrative level (TR. 10). At his request, Plaintiff appeared at a hearing before an administrative law judge (ALJ) on April 8, 2011 (TR. 23-78). The ALJ issued an unfavorable decision on June 3, 2011, finding that Plaintiff was not disabled (TR. 10-18). The Appeals Council denied Plaintiff's request for review on November 13, 2012, (TR. 1-4), making the decision of the ALJ the final decision of the Commissioner.

**STANDARD OF REVIEW**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d

1048, 1052 (10th Cir. 2009) (citations omitted). Therefore, "in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v.* Chater, 79 F.2d 1007. 1010 (10th Cir. 1996).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

Plaintiff's date last insured for DIB was December 31, 2010 (TR. 15). In addressing Plaintiff's disability applications, the ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of May 6, 2009 (TR. 15).

At step two, the ALJ determined that Plaintiff has severe impairments consisting of degenerative disc disease of his lumbar and cervical spine, resulting in chronic pain and stiffness in his back and neck (TR. 15). At step three, the ALJ found that none of Plaintiff's impairments singly, or in combination, meets or equals any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 15).

At the first phase of step four, the ALJ assessed Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light exertion work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b)

(TR. 15).

At the second phase of step four, the ALJ relied on the testimony of a vocational expert (VE) and found that Plaintiff's past relevant work as an appliance sales person, as actually performed, required heavy exertion, but that the job, as it is usually performed in the national economy, requires only light exertion (TR. 18). Therefore, at the last phase of step four, the ALJ determined that Plaintiff is not disabled because he can perform his past relevant work as appliance sales person.

## ISSUES PRESENTED

Plaintiff contends that the ALJ erred in failing to discuss significantly probative evidence that conflicted with his findings. The ALJ further contends that the ALJ's RFC assessment is not supported by substantial evidence.

## ANALYSIS

### I.    The ALJ's Consideration of the Medical Evidence in the Record

At step two of the sequential evaluation process, the ALJ found that Plaintiff has severe degenerative disc disease at the lumbar and cervical spinal regions causing chronic pain and stiffness in his back and neck. The ALJ discussed Plaintiff's medical records, most of which stem from his treatment after a work-related accident in December 2005 (TR. 13-14), and most of which predate the relevant onset date.

Plaintiff contends that the ALJ erred in selectively discussing only the medical evidence supporting his RFC determination. One of the doctors whose reports the ALJ ignored was Dr. Lance E. Rosson, D.O., who evaluated Plaintiff on April 10, 2006 (TR. 274-277), May 21, 2007 (TR. 278-281), October 2, 2007 (TR. 271-273) and April 14, 2008 (268-270).

In his first report, Dr. Rosson reviewed the medical evidence including the opinion of Dr. Robert E. Tibbs, a neurosurgeon, who determined that Plaintiff was not a good candidate for surgery because of Plaintiff's multi-level spinal abnormalities. Plaintiff's MRI study revealed disc herniation at L4-5, a large, broad-based disc bulge at L5-S1, and disc bulges with annular tears at both L1-2 and L2-3. Dr. Tibbs recommended further treatment by a physiatrist and physical therapy (TR. 275). Upon examination, Dr. Rosson documented tenderness to palpation over the lower lumbosacral region and paravertebral musculature, right greater than left. Additionally, Dr. Rosson noted tightness and spasms across the lower paravertebral musculature, decreased range of motion, and positive straight leg raising on the right (TR. 276). Dr. Rosson stated that Plaintiff was temporarily totally disabled, for purposes of Plaintiff's workers compensation claim, and would remain so until his symptoms resolved (TR. 276).

Dr. Rosson examined Plaintiff for the second time on May 21, 2007 (Tr. 278-281). During the time between examinations, Dr. Rosson noted that Plaintiff had been attended by Dr. Shawn Smith, a physiatrist, and had undergone a discogram under the direction of Dr. Tibbs. According to Dr. Rosson, the results of the discogram revealed

concordant pain at L2-3, L3-4, L4-5 and L5-S1 (TR. 278). Dr. Tibbs referred Plaintiff to Dr. Amal E. Moorad on December 12, 2006, for pain management. Although Dr. Moorad released Plaintiff from care on March 26, 2007, Plaintiff still complained of mid to low back pain radiating into his right leg and neck pain extending into his shoulder blades and upper back. Plaintiff reported to Dr. Rosson that his symptoms increased with activity and exertion and stated that the continuing pain required him to lie down frequently (TR. 279). On examination, Dr. Rosson observed tenderness to palpation over lumbar spine and neck, positive straight leg raising and an antalgic gait with a limp on the right (TR. 279-280). Dr. Rosson stated that Plaintiff "should be given entitlement to continuing medical benefits, in the nature of prescription medications on an as-needed basis, as well as other treatment that his treating physician or further selected physicians might deem necessary" (TR. 281). Significantly, Dr. Rosson also stated that, considering Plaintiff's educational background and employment history, Plaintiff should "undergo vocational rehabilitation in order to learn a more sedentary type of employment" (TR. 281). Dr. Rosson's opinion is supported by a statement made by Dr. Moorad on March 26, 2007, that Plaintiff "will need vocational assessment and probably vocational retraining" (TR. 258). These statements directly conflict with the ALJ's step four finding that Plaintiff can perform his past relevant work which is classified as "light" work.

Dr. Rosson's October 2, 2007, examination revealed much the same results as in his previous examinations. He determined that Plaintiff was still temporarily totally

disabled for purposes of his workers' compensation claim and recommended an MRI of the cervical spine to further delineate Plaintiff's injury (TR. 271-273).

The findings during the April 14, 2008 examination were also consistent with the previous examinations. Dr. Rosson again determined that Plaintiff was temporarily totally disabled for workers' compensation purposes, and he again recommended an MRI of Plaintiff's cervical spine (TR. 268-270).

As Plaintiff acknowledges, Dr. Rosson's opinions were elicited by the attorney representing Plaintiff in his workers' compensation case. But Dr. Rosson did examine Plaintiff and review the medical evidence each time he determined whether Plaintiff was still temporarily totally disabled. Viewed as a whole, the medical evidence in the record compels a conclusion that Plaintiff's back and neck pain never resolved. Dr. Moorad stated, for example, that Plaintiff "will always have pain" (TR. 267).

The Commissioner contends that Dr. Rosson's opinions are irrelevant because they were elicited before May 6, 2009, the earliest date Plaintiff could claim as the onset date, because the denial of his previous application for DIB did not become final until that date. The Tenth Circuit Court of Appeals rejected a similar argument in *Hamlin v. Barnhart*, 365 F.3d 1208 (10th Cir. 2004). In *Hamlin*, the court stated that "even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ." *Id.* at 1215 (citation omitted).

An ALJ should address "the uncontroverted evidence he chooses not to rely on as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Additionally, the ALJ may not pick and choose among the medical evidence, citing only that evidence favorable to a determination of nondisability. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

In this case, the ALJ discussed a great deal of medical evidence, most of which is from the period of time before the denial of Plaintiff's first application for DIB became final. On remand, the ALJ should discuss all of the medical evidence including the medical evidence that does not support his findings.

## II.    The ALJ's RFC Assessment

The ALJ determined that Plaintiff could perform a full range of light work with no nonexertional limitations. Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence.

In assessing Plaintiff's RFC, the ALJ relied heavily on the findings from a functional capacity evaluation (FCE) administered by physical therapists at the Functional Assessment Centers of Oklahoma (TR. 251-253). The findings of the FCE were adopted by Dr. Moorad, Plaintiff's pain management specialists, in determining that Plaintiff had reached maximum medical improvement for purposes of his workers' compensation case (TR. 254-256). But for purposes of Plaintiff's applications for DIB and SSI, the physical therapists performing the FCE are not considered "acceptable medical sources" within the meaning of the social security regulations. *See* 20 C.F.R. §§ 404.1513(d); 416.913(d). Moreover, as with other evidence in the record, the ALJ

adopted only the restrictions that fit neatly into his RFC assessment. None of the non-exertional limitations, such as Plaintiff's inability to crouch, squat or stoop on "a competitive basis" [2] were included in the RFC (TR. 15). More importantly, the ALJ also ignored the findings regarding Plaintiff's cervical mobility. Plaintiff's cervical mobility was only 77% of normal flexion, 90% of normal extension, 78% of normal left lateral flexion, 54% of left rotation, and 68% percent of right rotation (TR. 252). Plaintiff's past relevant work as an appliance sales person, the job identified by the ALJ as work to which Plaintiff could return, requires frequent reaching, according to the Dictionary of Occupational Terms. *See* DOT § 270.357-034, 1991 WL 672449. But the ALJ did not consider whether Plaintiff's diminished cervical mobility would affect his ability to perform this job. On remand, the ALJ must discuss the significantly probative evidence he did not rely upon, and he must consider the effect of all limitations on Plaintiff's ability to perform work activities.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

---

[2] According to the physical therapists, "crouching, squatting and stooping on a below-competitive basis" means that Plaintiff "could not perform activities in these positions efficiently in the workplace" (TR. 252).

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **January 9, 2014**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on December 26, 2013.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE